OPINION
Plaintiff-appellant Roger M. Estill appeals the April 12, 2001, and June 1, 2001 Judgment Entries of the Holmes County Court of Common Pleas which found in favor of defendant-appellee Lake Buckhorn Property Owners Association, Inc.
 STATEMENT OF THE FACTS AND CASE
The parties entered into stipulated facts. These facts were used by the trial court in making its determination of law and are the only facts we may use in our determination.Appellant is the owner of Lot No. 492 of Lake Buckhorn Subdivision. Lake Buckhorn is an artificial lake, created by the developers of the Lake Buckhorn Subdivision. The lake receives water through a series of natural runs which traverse land in the subdivision to a constructed earthen dam. The lake is surrounded by the lots platted in the Lake Buckhorn Subdivision in Mechanic Township, Holmes County, Ohio.
Appellee owns the land under the lake, all the roadways, common areas around the lake, and a number of private lots. Only members in good standing of Lake Buckhorn Property Association, or their guests, may use the common areas of Lake Buckhorn Subdivision. Appellant is a member in good standing of the association.
Appellee issued rules and regulations regulating boating on the lake. One such regulation restricted the size of speed boats on the lake to twenty feet according to the boat title. This restriction was enforced by appellee through the annual issuance or denial of display stickers for the boats.
Appellant owns a speed boat, which is twenty-one feet, three inches in length, according to the title. In 1999, and 2000, appellee denied appellant a permit sticker for his boat because the boat violated the aforementioned length restriction. Without the sticker, appellant is not permitted to take his boat to the lake, or to use it on the lake.
The parties stipulated the lake is one of the "waters in this state" as defined in R.C. 1547.01(B)(9).
On July 31, 2000, appellant filed a complaint in the Holmes County Court of Common Pleas, seeking a declaration the lake rules and regulations relating to boat size to be invalid, void, and unenforceable; appellant further sought a declaration only those restrictions listed in paragraph 6 of his deed were enforceable; and finally, a declaration any deed restriction regarding boat size which had been incorporated by reference into the deed restrictions, was invalid, void, and unenforceable. Appellee filed his answer on August 28, 2000.
On January 17, 2001, appellant filed his first amended complaint for declaratory judgment and injunction, with leave. Count one of appellant's first amended complaint alleged appellee's regulations relating to the length of the boats was invalid, void, and unenforceable for three reasons. First, appellant claimed the regulations are within the exclusive jurisdiction of the Ohio Department of Natural Resources, Division of Watercraft, to regulate the operation of watercraft on the waters of the State. Next, appellant argued appellees failed to follow the procedure set forth in the Ohio Revised Code for making special rules for operation of vessels on the lake. Finally, appellant maintained the regulation in question was not identical, and was in fact inconsistent with the provisions of Chapter 1547 and 1548 and rules adopted thereunder.
Appellant's second cause of action maintained even if appellant had violated the boat length restriction, the violation was not a violation of any prohibited activity in the regulations as they existed when appellant took title in 1988, and therefore any new restrictions would not apply to appellant. In appellant's third cause of action, he argued the deed restriction stating all property owners must follow the rules and regulations promulgated by appellee was against public policy because the regulation regarding the boat size was illegal. In appellant's fourth cause of action, he maintained the deed restrictions were applied against him in such a way as to estop appellee from applying it to appellant. In the fifth cause of action, appellant maintained the boat length restriction, as it now exists, has no practical value and therefore, should be extinguished. Finally, in appellant's sixth cause of action he maintained he would suffer irreparable injury if the rule and deed restriction were applied to him in that he would be denied full use and enjoyment of the lake and therefore full use and enjoyment of his property.
By agreement, the parties submitted the matter to the trial court for determination based upon the stipulations of fact and hearing briefs by counsel for each party. In an April 12, 2001 Judgment Entry, the trial court found in favor of appellee and against appellant. Thereafter, appellant dismissed the remaining counts of his complaint. In a June 1, 2001 Judgment Entry, the trial court, after recognizing the voluntary dismissal of the remaining counts, found the matter to be final and appealable. Appellant appeals from the April 12, 2001 Findings of Fact and Conclusions of Law and the June 1, 2001 Judgment Entry, assigning the following as error:
 THE COURT ERRED AS A MATTER OF LAW WHEN IT FOUND THAT THE DEFENDANT-APPELLEE HAS AUTHORITY TO PASS A RULE THAT LIMITS THE LENGTH OF VESSEL TO BE USED ON LAKE BUCKHORN, HOLMES COUNTY, OHIO TO 20 FEET.
 I
In his sole assignment of error, appellant maintains the trial court erred as a matter of law in finding appellee had the authority to pass a rule limiting the length of vessels to be used on Lake Buckhorn. We agree.
Appellant argues appellee was required to comply with R.C. 1547.61 as the owner of "waters in this state." R.C. 1547.61 controls the application of state laws and local rules and ordinances as they relate to matters surrounding the operation of vessels on the waters of this state. The statute provides, in relevant part:
 This chapter and other applicable laws of this state govern the operation, equipment, registration, numbering, and all other matters relating thereto whenever any vessel is operated on the waters in this state, whether the waters are under the jurisdiction and control of a state department, conservancy district, or political subdivision, or when any activity regulated by this chapter takes place thereon; but nothing in this chapter prevents the adoption of any rule or ordinance relating to operation and equipment of vessels the provisions of which are identical to the provisions of this chapter or rules adopted under it; provided, that such rules or ordinances shall be operative only so long as and to the extent that they continue to be identical to the provisions of this chapter or rules adopted under it. Conservancy districts and political subdivisions may adopt ordinances or rules limiting the horsepower of inboard or outboard motors, the maximum and minimum size and type of vessels, and the speed at which vessels may be operated, except that, upon impounded bodies of water covering three thousand five hundred acres of land or more, no conservancy district or political subdivision shall prohibit the use of motors of one hundred twenty horsepower or less when used in conjunction with properly proportioned boats in a reasonable area to be designed for the use of those motors and boats and for water skiing * * *
 Any state department, conservancy district, or political subdivision may, at any time, but only after public notice published in a newspaper of local circulation, make formal application to the chief of the division of watercraft for special rules with reference to the operation of vessels on any waters within its territorial limits and shall set forth therein the reasons which make such special rules necessary or appropriate.
Appellee argues Buckhorn Lake is private property and therefore appellee is entitled to impose regulations and restrictions. Appellee cites Lembeck v. Nye[1] for the proposition a non navigable inland lake is the subject of private ownership; and, where it is so owned, neither the public, nor an owner of an adjacent land, whose title extends only to the margin thereof, have a right to boat upon, or take fish from, its waters.[2] Appellee maintains because the lake is private property, the natural resource, the water, is its exclusive property right as the land owner.
In light of our recitation of R.C. 1547.61, supra, we must disagree.
In State ex rel. McElroy v. City of Akron, the Supreme Court held the Watercraft Act prohibiting political subdivisions of the State from imposing any license fees on the owners of watercraft for the privilege of operating watercraft on waters owned by the subdivision did not, among other things, deprive the city of property without due process of law.[3] The City of Akron had argued the lakes were owned by the political subdivision, and therefore were private property. Accordingly, the City was free to do with its property as it saw fit. The Supreme Court addressed this argument as follows:
 Third, the city urges that it holds the property involved in its proprietary capacity, and that the state is depriving it of property without due process of law. It is the old cry, `I can do with my property as I see fit.' This feudal theory of law has long been buried. All property is held subservient to the police power under the tacit condition that where it is necessary the property and its use may be regulated to promote the public safety and welfare. 10 Ohio Jurisprudence 2d 465, Constitutional Law, Section 387. In the present case, the state has determined in the interest of public safety and welfare that it is necessary that the licensing of watercraft both on public and private impoundments of water be controlled by the state; that anyone who operates watercraft on waters of this state must procure a license from the state and having procured the state license needs no other; that such license invests the holder with no right to [181 N.E.2d 31] operate his boat on other than waters of the state; that it in no way requires the owner of private waters or political subdivisions owning waters in their proprietary capacity to permit the use of their waters by anyone; and that it merely provides that the persons whom they allow to use their waters must have the licenses issued by the state.
 The statutes do not in any way pretend to affect the title or the control over such waters. Both the private owner and the political subdivision have the right to say who may or may not use such waters and may charge such fees as they so desire for access thereto and for the use of ramps or their docks. Such matters are clearly within control of the owner whether private or public. As long as the charge imposed by the political subdivision is not in the nature of a license for the right or privilege of operating watercraft upon its waters, it is valid. It is apparent that there has been no deprivation of property without due process of law by the enactment of the statutes here in question.
 It must be concluded that the enactment of Section 1547.61, Revised Code, constitutes a valid exercise of the police power and by the enactment of such section the state has pre-empted the authority to license watercraft whether such watercraft is operated on public or private waters.
Since McElroy was decided in 1962, R.C. 1547.61 has been amended five times.[4] While we note McElroy applied only to a state's right to license boats, the statute now clearly applies to "govern the operation, equipment * * * and all matters relating thereto whenever any vessel is operated on the waters in this state." Appellee concedes Lake Buckhorn is one of the "waters" in this state. Accordingly, any matters relating to vessels operated on Lake Buckhorn are governed by R.C. 1547.61.
In McElroy, the Supreme Court found recreational boating on the waters in this state were subject of statewide concern requiring uniform and general regulation by the state.[5] Further, because R.C. 1547.61
provides a specific procedure by which any state department, conservancy district, or political subdivision may create special rules regarding the operating of vessels on waters within their territorial limits, we find appellee was obliged to seek compliance with the statute. Accordingly, we find the trial court erred in its determination appellee was entitled to control the operation of vessels on its lake. Appellant's sole assignment of error sustained.
The April 12, 2001, and the June 1, 2001 Judgment Entries of the Holmes County Court of Common Pleas are reversed.
By: HOFFMAN, P.J. WISE, J. concur EDWARDS, J. concurs separately
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Holmes County Court of Common Pleas is reversed. Costs assessed to appellee.
[1] Lembeck v. Nye (1890), 47 Ohio St. 336.
[2] Id. at syllabus.
[3] State ex rel. McElroy v. City of Akron (1962),173 Ohio St. 189.
[4] 130 v H1 (eff. 1/23/63); 130 v H573 (eff. 9/30/63); 131 v 545 (eff. 11/1/65); 139 v H782 (eff. 3/4/83); 143 v H522 (eff. 6/13/90).
[5] McElroy at 193.